**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-00258-STV

JOHN COY DEMING,

      Plaintiff,

v.

TRACI A.,
AMANDA JARMAN, and
S. SHAFFER,

      Defendants.

_____

**ORDER**
_____

Entered by Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Defendant Shaffer's Motion to Dismiss [#39] (the "Shaffer Motion"), Defendants Traci A. and Amanda Jarman's Motion to Dismiss Plaintiff's Complaint Based on Lack of Service Pursuant to F.R.C.P. 4(m) [#52] (the "Alvarado/Jarman Service Motion"), and Defendants Traci Alvarado's and Amanda Jarman's Motion to Dismiss and Brief in Support [#68] (the "Alvarado/Jarman Motion") (collectively, the "Motions"). The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [#65, 66] This Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the motions. For the following reasons, **IT IS ORDERED** that the Shaffer Motion is **GRANTED**, the Alvarado/Jarman Service

Motion is **GRANTED IN PART** and **DENIED IN PART**, and the Alvarado/Jarman Motion is **GRANTED**.

I.      **BACKGROUND**[1]

Plaintiff is a convicted and sentenced state prisoner in the custody of the Colorado Department of Corrections ("CDOC") and is currently located at the Trinidad Correctional Facility ("TCF").  [#35]  The incidents that give rise to the instant matter occurred while Plaintiff was a pretrial detainee at the Larimer County Detention Center ("LCDC").  [##19 at 2-4; 19-1 at 2]

In July 2022, Plaintiff injured his left shoulder, though the source of the injury was unclear.  [*Id.* at 4]  When the injury did not improve, Plaintiff spoke with an LCDC nurse.  [*Id.*]  The nurse gave Plaintiff ibuprofen and suggested that he place a kite requesting to be seen by medical.  [*Id.*]

The injury progressively worsened and, on August 15, 2022, Plaintiff submitted a kite explaining that he had severe pain in his shoulder and was requesting a cortisone shot.  [*Id.*; *see also* #19-1 at 1]  A nurse responded that LCDC does not give cortisone shots and that Plaintiff should take over-the-counter medications for pain control.  [#19-1

---

[1] The facts are drawn from the allegations in Plaintiff's Amended Complaint (the "Complaint") [#19], which the Court accepts as true at this stage of the proceedings. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).  The Court also considers the attachments to the Complaint as Plaintiff references them in his Complaint.  *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) ("In evaluating a motion to dismiss, [a court] may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference.").  The Court does not consider any additional factual allegations raised by Plaintiff in briefing.  *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (disregarding additional factual claims asserted in briefing on a motion to dismiss, explaining that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss").

at 1]  The next day, Plaintiff sent another kite explaining that the ibuprofen was not working and requesting medical attention.  [#19 at 5; *see also* #19-1 at 2]  Defendant Health Service Administrator Amanda Jarman responded that Plaintiff had only tried one card of ibuprofen back on July 18, that he should try to utilize ibuprofen for his pain, and if that did not work the medical provider can review other medical treatments that are less-intrusive than cortisone shots.  [#19-1 at 2]

On August 18, 2022, Plaintiff filed a grievance.  [#19 at 5; *see also* #19-1 at 3]  In the grievance, Plaintiff indicated that he had severe shoulder pain, that cortisone shots are usually recommended for shoulder pain, but that LCDC was only advising Plaintiff to take more pills.  [#19-1 at 3]  Also in the grievance, Plaintiff said that his doctor had advised Plaintiff to only take a limited amount of ibuprofen because that medication could cause liver damage due to Plaintiff's Hepatitis-C diagnosis.  [*Id.*]  In response, Defendant Sheriff's Lieutenant Shaffer indicated that Plaintiff could see a doctor of his choice and that Plaintiff should submit a request to medical to make the appropriate arrangements.  [*Id.*]

On October 8, 2022, Plaintiff submitted another kite requesting to be seen by Sunrise Clinic in Loveland, Colorado.  [#19 at 5; *see also* #19-1 at 5]  On October 10, 2022, a nurse responded that Plaintiff had an upcoming chronic care appointment and that he should discuss his shoulder pain with the provider.  [#19-1 at 5]  Several weeks went by without Plaintiff receiving a medical appointment.  [#19 at 5]  During this time period, Plaintiff experienced pain in his shoulder and, eventually, numbness and loss of mobility in his arm.  [*Id.*]

On October 21, 2024, Plaintiff submitted another kite requesting an appointment at the Sunrise Clinic. [*Id.*; see also #19-1 at 6] On October 28, 2024, Plaintiff received a response from a nurse at LCDC indicating that Plaintiff had been placed on the nurse sick call list. [#19-1 at 6] Three days later, Plaintiff was taken for an x-ray. [#19 at 6] Defendant Traci Alvarado, a medical provider at LCDC, made a brief appearance. [*Id.* at 6-7] Plaintiff asked whether the x-ray would show muscle or tendon problems and was informed that it would not. [*Id.* at 6] Plaintiff informed Ms. Alvarado that the injury did not feel bone related, felt instead like a tendon injury that Plaintiff had previously suffered, and that as a result the x-ray would be pointless. [*Id.* at 7] Nonetheless, Ms. Alvarado told Plaintiff that he needed to have the x-ray before he could see a doctor or have an MRI. [*Id.* at 6-7] Ms. Alvarado did not examine Plaintiff's shoulder. [*Id.* at 6-7]

On November 3, 2022, Plaintiff submitted another kite requesting an appointment at the Sunrise Clinic. [*Id.* at 6; *see also* #19-1 at 7] In the kite, Plaintiff indicated that the x-ray was "pointless" since the shoulder injury was "a tendon because [Plaintiff has] had the issue before and got a cortisone shot." [#19-1 at 7] Somebody at LCDC responded that Plaintiff had been seen at the clinic on October 31, his shoulder was assessed, and that Ms. Alvarado had determined that an outside appointment was not necessary. [*Id.*]

Meanwhile, on multiple occasions in October and November 2022, Plaintiff filed grievances stating that he had requested an outside medical appointment for his shoulder pain. [#19-1 at 8-9, 16-18] In most of these grievances, Plaintiff stated that he wanted an appointment with an outside medical provider. [*Id.*] On November 10, 2022, Ms. Jarman responded that Plaintiff had been assessed by a medical provider on October 31 and that Ms. Jarman needed to locate the results of the x-ray taken that day. [*Id.* at 8]

4

Ms. Jarman supplemented this response the next day by stating that the x-ray did not show any acute issues and that Ms. Alvarado did not recommend an outside appointment. [*Id.* at 8-9]   Ms. Jarman instructed Plaintiff to use ibuprofen and Tylenol for pain management.   [*Id.*]   She also noted that Plaintiff had been prescribed a gel for musculoskeletal pain but that Plaintiff had requested that the gel be discontinued.  [*Id.* at 8]

Plaintiff responded to Ms. Jarman's response on November 12.  [*Id.* at 10]  Plaintiff complained that he was again being "pushed pills" which were not good for his liver due to his Hepatitis-C.  [*Id.*]  Plaintiff explained that he wanted to see his outside doctor and schedule an appointment with him.  [*Id.*]  Two days later, Defendant Shaffer responded that Plaintiff could see an outside doctor if LCDC's medical staff deemed it medically advisable and necessary prior to release.  [*Id.*]  Defendant Shaffer also indicated that Plaintiff might be responsible for the costs of such a visit.  [*Id.*]  Plaintiff replied the next day stating that he has been trying to obtain outside medical treatment, LCDC has consistently denied that treatment, and, as a result, Plaintiff has been in constant, worsening pain.  [*Id.*]  Between November 15 and 16, Plaintiff and Defendant Shaffer exchanged several messages about the grievance process and Plaintiff's shoulder problems.  [*Id.* at 10-12]  This correspondence ended on November 16 with Ms. Jarman asking Plaintiff for a release of information so that LCDC could obtain medical records from Plaintiff's outside provider.  [*Id.* at 12]

In March 2023, a memorandum was posted in Plaintiff's unit indicating that inmates could complete a survey regarding the care they were receiving from LCDC's medical staff.  [#19 at 11]  Plaintiff completed the survey and, on March 29, 2023, a

representative from the company conducting the survey visited Plaintiff.  [*Id.*]  Plaintiff explained that he had been in severe pain for months and that LCDC's medical staff refused to see him.  [*Id.*]  The next day, Plaintiff was taken to medical and seen by a provider.  [*Id.*]  The medical provider stated that she believed Plaintiff had torn his tendon but that, because the injury was so old, there was not much that could be done.  [*Id.* at 11-12]

Throughout his time at the jail, Plaintiff "repeatedly informed [Defendant] Shaffer through the grievance process as well as verbally that he was in severe pain and needed to be seen by a doctor."  [*Id.* at 12]  Ms. Alvarado "was [also] continually told how much pain Plaintiff was in and [that Plaintiff] was losing function in [his] arm because of [the] injury."  [*Id.* at 8]  Plaintiff also complained to the nurses at LCDC about his pain.  [*Id.*]  Plaintiff continued to experience pain until his release from the facility in July 2023.  [*Id.* at 6]

Plaintiff, proceeding pro se, initiated the instant action on January 27, 2023.  [#1]  He filed the operative Complaint on February 23, 2024.  [#19]  The Complaint asserts a single claim pursuant to 42 U.S.C. § 1983 alleging deliberate indifference in violation of the Eighth Amendment.  [*Id.*]  The Complaint seeks monetary relief against each Defendant.  [*Id.* at 15]

Defendant Shaffer filed the Shaffer Motion on May 23, 2024.  [#39]  Plaintiff has responded to the Shaffer Motion [#64] and Defendant Shaffer has replied [#70].  Defendants Alvarado and Jarman filed the Alvarado/Jarman Service Motion on July 31, 2024 [#52] and the Alvarado/Jarman Motion on August 28, 2024 [#68].  Plaintiff sought an extension of time to respond to the two motions filed by Defendants Alvarado and

Jarman [#80] which this Court granted, thereby extending Plaintiff's deadline to respond to those motions to November 25, 2024 [#81].  Despite this extension, Plaintiff has not responded to either of those motions.

## II.    STANDARD OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(5)

Federal Rule of Civil Procedure 12(b)(5) permits a party to move to dismiss a claim for "insufficient service of process."  "A Rule 12(b)(5) motion . . . challenges the mode or lack of delivery of a summons and complaint."  *Gallan v. Bloom Business Jets, LLC*, 480 F. Supp. 3d 1173, 1178 (D. Colo. 2020) (quotation omitted).  "When the sufficiency of process is challenged, the [p]laintiff must demonstrate that the procedure employed by him to effect service satisfied the requirements of Rule 4 of the Federal Rules of Civil Procedure."  *Id.* (quotation omitted).  "The Court may consider affidavits and other documentary evidence in ruling on a Rule 12(b)(5) motion, and all factual disputes must be resolved in the plaintiff's favor."  *Burman v. Weld Cty. Sheriffs*, No. 23-cv-00151-NYW-NRN, 2024 WL 1051949, at *2 (D. Colo. Mar. 11, 2024).

### B.    Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or

conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id*. (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### C.    Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "If the plaintiff

8

fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Id.* at 591 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the particular conduct is clearly established. . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted).

### D.    Pro se Litigants

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).  "The *Haines* rule applies to all proceedings involving a pro se litigant."  *Id.* at 1110 n.3.  The Court, however, cannot be a pro se litigant's advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).  Moreover, pro se parties must "follow the same rules of procedure that govern other litigants."  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

## III.    ANALYSIS

Defendant Shaffer argues that: (1) Plaintiff has failed to state a plausible claim of deliberate indifference against her [#39 at 7-14] and (2) she is entitled to qualified immunity [*id.* at 14-16].  Defendants Alvarado and Jarman argue that: (1) they were never properly served [#52] and (2) Plaintiff has failed to state a plausible claim of deliberate indifference against them [#68].  The Court begins with the service issue raised by Defendants Alvarado and Jarman, then turns to the plausibility of Plaintiff's claims.

### A.    Service

Defendants Alvarado and Jarman argue that they were never properly served. [#52]  Federal Rule of Civil Procedure 12(b)(5) permits a party to move to dismiss a claim for "insufficient service of process."  "A Rule 12(b)(5) motion . . . challenges the mode or lack of delivery of a summons and complaint."  *Gallan*, 480 F. Supp. 3d at 1178 (quotation omitted).  "When the sufficiency of process is challenged, the [p]laintiff must demonstrate

that the procedure employed by him to effect service satisfied the requirements of Rule 4 of the Federal Rules of Civil Procedure." *Id.* (quotation omitted).

Federal Rule of Civil Procedure 4(e)(1) authorizes service on an individual by following state law for serving a summons in the state where the district court is located or where service is made. In pertinent part, Colorado Rule of Civil Procedure 4(e)(1), in turn, authorizes service on an individual by leaving a copy of the summons "at the person's usual workplace, with the person's supervisor, secretary, administrative assistant, bookkeeper, human resources representative or managing agent." Here, Plaintiff is proceeding in forma pauperis and, as a result, service has been attempted by the United States Marshals Service ("USMS"). [##3, 25-27] The USMS attempted to serve Defendants Alvarado and Jarman by leaving a copy with Deputy Sheriff Randall Van Eck at the Larimer County Sheriff's Office, the office that operates the LCDC. [##25, 27]

Defendants Alvarado and Jarman argue that the USMS's attempted service upon Deputy Van Eck was an improper attempt to serve Defendants Alvarado and Jarman at their workplace. Specifically, Defendant Alvarado argues that, at the time of service, she was no longer an employee of the company that provided health care services to LCDC, as evidenced by the proof of service itself and an email from a Larimer County Sheriff's Office Senior Administrative Specialist. [##52 at 4-5; 52-1] Defendant Jarman argues that she was not employed by the Larimer County Sheriff's Office and Deputy Van Eck is not Defendant Jarman's supervisor, secretary, administrative assistant, bookkeeper, human resources representative or managing agent. [#52 at 5-6] In support, Defendant Jarman submits her own affidavit attesting to these facts. [#52-2] And the Court may

consider the affidavit and other documentary evidence submitted by Defendants Alvarado and Jarman in ruling on their Rule 12(b)(5) motion. *Burman*, 2024 WL 1051949, at *2.

Thus, Defendants Alvarado and Jarman have presented documentary evidence that they have not been properly served at their place of employment, as attempted by the USMS. Plaintiff must thus present some evidence that service was proper. *Gallan*, 480 F. Supp. 3d at 1178. But Plaintiff has not responded to the Alvarado/Jarman Service Motion or otherwise attempted to prove valid service. As a result, he has failed to satisfy his burden of proving service. Accordingly, the Court GRANTS the Alvarado/Jarman Service Motion to the extent it seeks to dismiss the operative Complaint against Defendants Alvarado and Jarman for failure to properly serve them.

The Alvarado/Jarman Service Motion seeks to dismiss the claims against them with prejudice, arguing that Plaintiff has failed to serve them within the ninety days provided for service by Federal Rule of Civil Procedure 4(m). [#52 at 6] The Court declines to do so. Initially, the Court notes that, by its own terms, Rule 4(m) provides that dismissal for failure to timely serve should be without prejudice. Fed. R. Civ. P. 4(m). Moreover, Rule 4(m) authorizes a court, on its own, to order that service be made within a specified time. Here, once again, Plaintiff is proceeding in forma pauperis and thus it is the USMS, not Plaintiff himself, who is attempting to provide service. The Court concludes that it would be unjust to dismiss Plaintiff's claims with prejudice based upon the service actions of the USMS. As a result, in the event Plaintiff chooses to file an Amended Complaint addressing the deficiencies identified in Section III.B infra, the Court ORDERS counsel for Defendants Alvarado and Jarman to file, under restriction, a valid address for Defendants Alvarado and Jarman where the USMS may effectuate service

upon Defendants Alvarado and Jarman.  The Court will then set a deadline for service to occur.

       **B.**     **Plausibility**

All Defendants argue that Plaintiff has failed to plausibly allege an Eighth Amendment deliberate indifference claim.  [##39 at 7-14; 68 at 4-14]   The Eighth Amendment to the United States Constitution protects a prisoner's right to "humane conditions of confinement guided by 'contemporary standards of decency.'"  *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).   Prison officials are required to "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and . . . tak[e] reasonable measures to guarantee the inmates' safety."  *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998).   Prison officials violate this standard when they are deliberately indifferent to an inmate's serious medical needs.  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

"'Deliberate indifference' involves both an objective and a subjective component. The objective component requires the deprivation of the medical need to be 'sufficiently serious.'"  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quotation omitted).

The subjective component of a deliberate indifference claim "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'"  *Sealock*,

218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837).  Mere negligence, however, is not sufficient.  *Farmer*, 511 U.S. at 835.  Rather, "[t]he subjective component is akin to 'recklessness in the criminal law,' where, to act recklessly, a 'person must "consciously disregard" a substantial risk of serious harm.'"  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837, 839).  In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837) (alteration in original); *see also id.* at 753 (stating that the subjective component inquiry is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?").

In the prison medical context, the Tenth Circuit recognizes two types of conduct that will constitute deliberate indifference to a medical need.  First, "a medical professional may fail to treat a serious medical condition properly."  *Sealock*, 218 F.3d at 1211.  The Tenth Circuit has made clear "that the subjective component [of a deliberate indifference claim] is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."  *Self*, 439 F.3d at 1232.  "[N]egligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).  Second, a prison official may "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment."  *Id.*

14

Here, Defendants challenge both the objective and subjective component of Plaintiff's deliberate indifference claim. [##39 at 10-14; 68 at 9-14] The Court therefore analyzes each component of Plaintiff's deliberate indifference claim in turn.

### 1.    Objective Component

Defendant Shaffer states that "Plaintiff . . . has failed to plead both prongs of the deliberate indifference standard," but does not make any argument that Plaintiff's shoulder problems were not sufficiently serious to satisfy the objective component of a deliberate indifference claim. [#39 at 10-11] Defendants Alvarado and Jarman argue that Plaintiff has failed to sufficiently allege the objective prong, primarily because Plaintiff was provided over-the-counter medications and was not seen by a physician or given a cortisone shot for treatment. [#68 at 10] The Court does not find that argument persuasive. Plaintiff alleges in the Complaint that he needed these additional treatments, and it was only because of Defendants' own deliberate indifference that such treatments were refused. [*See generally* #19] And one would certainly not argue that an inmate who had been stabbed twenty times in the chest did not suffer from a sufficiently serious medical condition simply because jail officials callously chose to treat the stab wounds with ibuprofen only. Thus, the fact that Plaintiff was not provided more aggressive treatment does not convince the Court that Plaintiff has failed to plausibly plead the objective component of his claim.

Plaintiff alleges that he was in severe and worsening pain for nearly a year. [*See generally* #19] Plaintiff further alleges loss of mobility in his shoulder and numbness in his arm. [*Id.* at 5] And Plaintiff referenced in the Complaint and attached to the Complaint affidavits from his cellmates attesting that Plaintiff could not sleep due to his pain, was in

pain every time he used his left arm, and could not raise his arm above his head.  [*Id.* at 8; #19-1 at 13-14]  A medical provider ultimately concluded that Plaintiff likely had a torn shoulder tendon.    [#19 at 11-12]    These allegations plausibly allege the objective component of Plaintiff's deliberate indifference claim.  *McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019) (several hour delay in getting treatment for considerable shoulder pain satisfied the objective prong of the deliberate indifference test); *Sparks v. Rittenhouse*, 164 F. App'x 712, 718 (10th Cir. 2006) (allegations of extreme shoulder pain, loss of feeling, and loss of grip sufficiently alleged the objective prong of the deliberate indifference test).

## 2.    Subjective Component

Defendants also challenge the subjective component of Plaintiff's claims.  [##39 at 10-14; 68 at 11-14]  As explained above, in the prison medical context, the Tenth Circuit recognizes two types of conduct that will constitute deliberate indifference to a medical need.  First, "a medical professional may fail to treat a serious medical condition properly." *Sealock*, 218 F.3d at 1211.   Second, a prison official may "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment."  *Id.*

Here, with respect to Defendants Shaffer and Jarman, Plaintiff appears to allege the second type of deliberate indifference—prison officials who denied Plaintiff access to medical care.[2]  [*See generally* #19]  But Plaintiff has failed to plausibly allege such a

---

[2] It is unclear from the Complaint whether Defendant Jarman, like Defendant Alvarado, has some degree of medical training. [*See generally* #19]  It appears from the Complaint, however, that even if Defendant Jarman had some medical training, she primarily relied upon Defendant Alvarado's medical advice.

claim.  With respect to Defendant Shaffer, Plaintiff alleges that, in response to an August 18, 2022 grievance, Defendant Shaffer told Plaintiff that he could see a doctor of his choice, that he just needed to submit the request to medical.  [#19-1 at 3]  And when Plaintiff submitted a medical kite in early October, a nurse responded two days later about an upcoming care appointment.  [*Id*. at 5]  On October 21, Plaintiff requested another appointment for his shoulder and was seen by a doctor ten days later.  [*Id*. at 6; #19 at 5-6]  Then, in November, in response to another grievance, Defendant Shaffer again told Plaintiff that he could be seen by an outside doctor if LCDC's medical staff deemed it medically necessary, though Plaintiff may have to pay the costs of such a visit.  [#19-1 at 10]  Defendant Shaffer's deferral to LCDC's medical staff's judgment on whether outside medical consultation was necessary does not constitute subjective deliberate indifference; Defendant Shaffer was "entitled to rely upon the advice and course of treatment prescribed by [LCDC's] medical personnel," provided such reliance was reasonable.  *Key v. McLaughlin*, No. 10-cv-00103-WJM-CBS, 2013 WL 1507950, at *5 (D. Colo. Mar. 19, 2013) (collecting cases), *report and recommendation adopted*, 2013 WL 1509478 (D. Colo. Apr. 12, 2013).  Here, LCDC's medical personnel prescribed a course of treatment and the Court cannot say that the treatment was so outrageous that Defendant Shaffer was subjectively deliberately indifferent to Plaintiff's medical condition when Defendant Shaffer deferred to those medical providers.  And there are no allegations that Defendant Shaffer prevented Plaintiff from seeing LCDC's medical staff. And while Plaintiff does allege that he "repeatedly informed [Defendant] Shaffer through the grievance process as well as verbally that he was in severe pain and needed to be seen by a doctor" [#19 at 12], he also alleges that he routinely complained to the LCDC

17

nurses about his pain [*id.* at 8], thereby implying that Plaintiff was permitted to see the LCDC medical staff.  Thus, the Court concludes that Plaintiff has failed to plausibly plead the subjective component of his deliberate indifference claim against Defendant Shaffer.[3]

A similar analysis applies to Plaintiff's claim against Defendant Jarman.  The allegations against Defendant Jarman primarily revolve around her handling of grievances in November 2022.[4]  In responding to Plaintiff's grievances, Defendant Jarman indicated that Plaintiff had underwent an x-ray, the x-ray did not show any acute issues, and that Defendant Alvarado did not recommend an outside appointment.  [#19-1 at 8-9]  Defendant Jarman then instructed Plaintiff to follow the course of treatment prescribed by Defendant Alvarado.  [*Id.*]  Once again, the Court cannot conclude that Ms. Jarman's decision to rely upon and follow the medical treatment recommended by Ms. Alvarado was so outrageous as to constitute subjective deliberate indifference.  *Key*, 2013 WL 1507950, at *5

With respect to Defendant Alvarado, Plaintiff's theory of deliberate indifference changes.  Here, Plaintiff alleges that Ms. Alvarado, a medical professional, failed to treat Plaintiff's serious medical condition properly.  [*See generally* #19]  In evaluating this claim, the Court must remain cognizant that "negligent failure to provide adequate medical care,

---

[3] Because Plaintiff has failed to plead a constitutional violation against Defendant Shaffer, Defendant Shaffer is entitled to qualified immunity.  *Quinn*, 780 F.3d 998, 1004 (stating that to overcome a qualified immunity defense, a plaintiff must show that an official violated a statutory or constitutional right and that the right was clearly established).

[4] There is a single allegation that, in August 2022, in response to Plaintiff's request for a cortisone shot for his shoulder, Defendant Jarman responded that Plaintiff should first try utilizing ibuprofen for his pain and, if that did not work, the medical provider could review other, less-intrusive measures.  [#19-1 at 2]  The Court cannot conclude that Defendant Jarman's decision in August to recommend that Plaintiff actually take the ibuprofen that had been given him by a nurse to see if that treatment worked plausibly suggests subjective deliberate indifference.

even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins*, 165 F.3d at 811.  And "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."  *Id.*

Here, Plaintiff alleges that Defendant Alvarado chose to have Plaintiff undergo an x-ray instead of an MRI, even though Plaintiff informed her that he believed it was a tendon injury and the x-ray technician confirmed that such an injury would not appear on an x-ray.  [#19 at 6-7]  The Court cannot conclude that Defendant Alvarado's decision to begin diagnosing Plaintiff's shoulder with an x-ray, as opposed to the more intrusive MRI, constitutes subjective deliberate indifference.  Even if such a decision was negligent— and the Court is far from certain that it was—it does not give rise to a constitutional violation.  *Perkins*, 165 F.3d at 811.  Similarly, Plaintiff's disagreement with Defendant Alvarado's decision to recommend a gel and ibuprofen rather than a cortisone shot does not state a constitutional violation.  *Id.*  This is true even if Plaintiff's outside medical provider had treated Plaintiff's shoulder problems with a cortisone shot.  *See Tivis v. Beecroft*, No. 06-cv-02025-WYD-CBS, 2007 WL 2786434, at *9 (D. Colo. Sept. 24, 2007) ("Even if Mr. Tivis had set forth evidence demonstrating that another physician would have attempted to treat him with alternate medications or would have considered some type of surgical procedure earlier, this would not serve to create a triable issue on his Eighth Amendment claim."), *aff'd*, 311 F. App'x 88 (10th Cir. 2008); *see also Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) (Plaintiff "has only shown . . . that another physician in the same circumstance might have ordered different tests and treatment. This evidence raises questions of medical judgment; it does not show deliberate indifference.").  This is because the question of whether a certain form of treatment should

19

be prescribed "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107.

This is not to say that Defendant Alvarado's continued ineffective treatment could not, at some point, rise to the level of deliberate indifference.  Plaintiff alleges that he continued to suffer in pain until his release in July 2023, approximately nine months after the x-ray.  [#19 at 6]  Had Plaintiff followed Defendant Alvarado's recommended course of conduct, continued to suffer extreme pain, and Defendant Alvarado nonetheless refused to take reasonable measures to abate that pain—such as perhaps scheduling an MRI or considering a cortisone shot—it is possible that Defendant Alvarado's actions would rise to the level of subjective deliberate indifference.  But Plaintiff's allegations concerning Defendant Alvarado's knowledge about Plaintiff's continued shoulder problems are conclusory.  [#19 at 8 (stating that Ms. Alvarado was "continually told how much pain Plaintiff was in" but failing to indicate who informed Ms. Alvarado of this fact or when these conversations occurred)]   And the Complaint does not detail Ms. Alvarado's actions between November 2022 and July 2023, including the manner in which she treated Plaintiff's shoulder or whether she outright refused to provide any treatment. As a result, Plaintiff has failed to plausibly plead the subjective component of his deliberate indifference claim against Defendant Alvarado.

Thus, the Court concludes that Plaintiff has failed to plausibly allege the subjective component of his deliberate indifference claim against any of the Defendants.  The Court thus GRANTS the Shaffer Motion and the Alvarado/Jarman Motion.   Nonetheless, because Plaintiff proceeds pro se and it is possible that he could plausibly assert a deliberate indifference claim with better pleading, the Court DISMISSES the Complaint

WITHOUT PREJUDICE. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend" (quotation omitted)); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

**IV.    CONCLUSION**

For the foregoing reasons, the Court:

(1) **GRANTS** Defendant Shaffer's Motion to Dismiss [#39];

(2) **GRANTS** Defendants Traci A. and Amanda Jarman's Motion to Dismiss Plaintiff's Complaint Based on Lack of Service Pursuant to F.R.C.P. 4(m) [#52] to the extent it seeks to dismiss Plaintiff's Complaint, but DENIES it to the extent it seeks to dismiss the Complaint with Prejudice;

(3) **GRANTS** Defendants Traci Alvarado's and Amanda Jarman's Motion to Dismiss and Brief in Support [#68];

(4) **ORDERS** Plaintiff, should he wish to continue to pursue his deliberate indifference claim, to file an Amended Complaint within 21 days of this Order that addresses the deficiencies identified in this Order; should Plaintiff fail to file an Amended Complaint within that time frame the Court will dismiss the case; and

(5) **ORDERS** counsel for Defendants Alvarado and Jarman, within fourteen days of the filing of an Amended Complaint as detailed in Paragraph (4) above, to file, under

restriction, a valid address where the United States Marshals Service may serve Defendants Alvarado and Jarman.

DATED: December 19, 2024                    BY THE COURT:


s/Scott T. Varholak
United Stated Magistrate Judge